# IN THE COURT OF APPEALS OF IOWA

No. 18-0650
Filed August 15, 2018

**IN THE INTEREST OF M.G.,**
**Minor Child,**

**M.M., Mother,**
        Appellant,

**R.G., Father,**
        Appellant.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Gary K.

Anderson, District Associate Judge.


        A mother and father appeal the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**


        Scott D. Strait, Council Bluffs, for appellant mother.

        J. Joseph Narmi, Council Bluffs, for appellant father.

        Thomas J. Miller, Attorney General, Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

        Roberta Megel of State Public Defender Office, Council Bluffs, guardian ad

litem for minor child.


        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Marci and Ronald challenge an order terminating their parental rights in their child M.G. (born 2016). The juvenile court terminated their parental rights pursuant to Iowa Code section 232.116(1)(d), (e), (h), and (i) (2017). On appeal, Marci and Ronald challenge the sufficiency of the evidence supporting the termination order. They contend the Iowa Department of Human Services (IDHS) failed to make reasonable efforts towards reunification. Marci separately contends the State failed to show M.G. could not be returned to her care and requests more time to work toward reunification. Ronald separately argues the juvenile court should have considered factors enumerated in Iowa Code section 232.116(3) to preserve the parent-child relationship.[1]

I.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing termination of a parent-child relationship is well established and need not be repeated. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018) (detailing statutory framework). When a juvenile court relies on multiple statutory grounds to terminate a parent's rights, we are at liberty to affirm its ruling on any supported ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

---

[1] We note Ronald filed a signed notice of appeal one day beyond the deadline set by our supreme court upon Ronald's application for extension. Because the supreme court considered the application for extension as a timely notice of appeal and Ronald later filed a signed notice of appeal, we conclude Ronald substantially complied with our appellate rules and we treat his appeal as timely. *See In re T.F.*, No. 03-0500, 2003 WL 21076398, at *1 (Iowa Ct. App. May 14, 2003) (concluding a notice of appeal substantially complied with appellate rules when a mother filed an unsigned notice of appeal within deadline and later filed a signed notice of appeal beyond the deadline).

II.

A.

We address the sufficiency of the evidence in support of section 232.116(1)(i). This provision authorizes the termination of parental rights upon clear and convincing evidence of the following:

> (1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.
>
> (2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.
>
> (3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

Iowa Code § 232.116(1)(i).

We have little trouble concluding there is clear and convincing evidence supporting the first two elements of this ground. Within the meaning of chapter 232, "physical abuse or neglect" means "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." Iowa Code § 232.2(42). The family came to the attention of IDHS in December 2016 when M.G. was hospitalized with life-threatening head injuries, including bilateral subdural hematomas and subarachnoid, intracerebral, and retinal hemorrhaging. Treating physicians concluded M.G.'s injuries were consistent with non-accidental trauma. Based on the parents' statements, IDHS reasonably deduced Ronald caused M.G.'s injuries. The child was removed from the parents' care and was adjudicated in need of assistance pursuant to section 232.2(6)(b) and (c)(2) upon

a finding of physical abuse. Ronald was charged criminally for the abuse of M.G., and Ronald eventually pleaded guilty to neglect or abandonment of a dependent person, in violation of Iowa Code section 726.3 (2015). There is clear and convincing evidence M.G. was subject to physical abuse that posed a significant risk to his life within the meaning of section 232.116(1)(i).

The parents contend there is insufficient evidence establishing services would not correct the conditions that led to the physical abuse of M.G. We disagree. When Ronald pleaded guilty to neglect or abandonment of a dependent person he did so by way of an *Alford* plea. Although he pleaded guilty, he denied then and denies now he harmed M.G. Given that Ronald denies abusive conduct, he has not been receptive to services to correct the conduct giving rise to the statutory harm. Ronald's unwillingness to address his behaviors giving rise to the abuse of M.G. places the child at risk. This is particularly true given Marci's expressed intent to remain in a relationship with Ronald. On this record, there is clear and convincing evidence that there are no services available to mitigate the future risk of harm to the child.

B.

Both Marci and Ronald argue the State failed to make reasonable efforts toward reunification. As part of its ultimate proof, the State must establish it made reasonable efforts to return the children to their home. *See* Iowa Code § 232.102(7) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by [IDHS]

to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the reasonable efforts mandate is the child welfare agency must make reasonable-efforts to "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable-efforts mandate is determined by the circumstances of each case. *See In re C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

Ronald contends the State did not make reasonable efforts here because it failed to provide him with housing assistance, gas vouchers, visitation at his home, and medical insurance. While Ronald may have found these beneficial, they would not have prevented or eliminated the need for removal. Ronald's benefit from gas cards would be limited given he does not have a driver's license. Medical insurance would also minimally impact the need for removal, if at all. He was able to seek treatment for over a year at Inroads to Recovery for his heroin addiction without insurance and received medical care when needed as evidenced by his hospitalizations. His desire for housing assistance and visitations within the home also would not impact the need for removal. Visitations within a more private setting would not be a reasonable service given Ronald's past propensity for violence against both M.G. and Marci. *See id.* (noting reasonable efforts must prioritize the health and safety of the child). We conclude these services do not constitute reasonable efforts because the provision of these services are immaterial to the cause of removal—the physical abuse of the child.

Marci does not indicate what services the State should have reasonably provided. Instead she makes a cursory argument that "[t]he State has not provided the sufficient evidence necessary to establish that the requisite services for reunification had been offered by the Department." Although she cites legal authority, none support her claim. Her bare assertion is insufficient for our review. *See* Iowa R. App. P. 6.903(2)(g)(3) (requiring supporting legal authority be provided); *see also Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 431 n.2 (Iowa 2002) (holding random mention of an issue without elaboration or supporting authority fails to preserve the claim for appellate review); *In re O.N.*, No. 17-0918, 2017 WL 3525324, at *1 n.1 (Iowa Ct. App. Aug. 16, 2017) (declining to address underdeveloped appellate claim), *In re R.N.*, No. 13-0743, 2013 WL 3864550, at *3 (Iowa Ct. App. July 24, 2013) (concluding passing mention of an issue in brief is not sufficient for appellate consideration). We note Marci rebuffed suggestions that she end her relationship with Ronald, M.G.'s physical abuser, which served as the basis for the termination of her parental rights. Given her steadfast support of Ronald, it is difficult to imagine what services IDHS could have provided that Marci would have utilized and would have eliminated the need for removal.

## C.

Marci and Ronald argue termination is not in M.G.'s best interest. When considering the best interest of the child, we primarily consider the child's safety, opportunity for growth, and the physical, mental, and emotional needs of the child before authorizing termination. *See* Iowa Code § 232.116(2). Relevant to the inquiry is the parents' past performance. *See In re D.W.*, 791 N.W.2d 703, 709

(Iowa 2010). In this case, Marci and Ronald each have five other children but none are in their care. This evidences that both parents have not assumed the responsibility of providing for their respective children. From this we can infer the parents will not assume the responsibility of providing for M.G. and taking care of M.G.'s physical, mental, and emotional needs. Indeed, the child suffered life-threatening injuries at the hands of Ronald. Marci wishes to continue in her relationship with Ronald. It is in M.G.'s best interest to terminate both parents' parental rights.

## D.

Ronald contends the parent-child bond should serve to preclude termination in this case. *See* Iowa Code § 232.116(3)(c). We disagree. There is no bond in this case. M.G. was approximately one month old when he was removed from the home after Ronald inflicted serious injuries upon him. M.G. was less than two years old at the time of the termination hearing. Given M.G.'s young age, we cannot agree that his bond with M.G. is so strong as to offset the benefits of termination of the parent-child relationship. *See In re A.M.*, 843 N.W.2d at 113 (noting child's young age when concluding the parent-child bond did not weigh against termination).

## E.

Marci argues M.G. could have been returned to her care at the time of the termination hearing. Her own testimony undercuts her claim. At the time of the hearing, she remained romantically involved with Ronald. She did not have a home, could not provide an address of where she was staying, and was unemployed. She also repeatedly failed to meet with her IDHS caseworker and

missed a drug screen. These facts all indicate she was not capable of caring for M.G. at the time of the hearing.

Marci also seeks additional time to work toward reunification. Iowa Code section 232.104(3)(b) permits the court to grant an additional six months to work toward reunification but requires the court provide "specific factors, conditions, or expected behavioral changes" it believes will eliminate the need for removal by the end of the extended period. Here, the court could not provide any reasons why the need for removal would be eliminated with additional time because of Marci's express intent to continue her relationship with Ronald. For the same reason, we cannot say the need for removal would no longer exist if Marci was given additional time to work toward reunification. An extension of time would simply delay the inevitable. The child has a need for permanency now.

III.

We affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**

.